UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KYMANI JOHNSON,<br><br>                         Plaintiff,<br><br>              -against-<br><br>THE CITY OF NEW YORK, Police Officer<br>KANDICE HALL, Police Officer BENITO CRUZ,<br>Police Officer "JANE DOE," Police Officers<br>"JOHN ROE" #1-3,<br><br>                         Defendants. | No. 22 Civ.<br><br>**COMPLAINT AND JURY<br>DEMAND** |

Kymani Johnson by and through his attorneys, Emery Celli Brinckerhoff Abady Ward &
Maazel LLP, alleges as follows for his complaint:

### PRELIMINARY STATEMENT

1.      On May 27, 2019, Plaintiff Kymani Johnson was 19 years old and about to
graduate from high school. It was Memorial Day. That afternoon, Mr. Johnson was playing
basketball with his friends in Haffen Park, in the Baychester neighborhood of the Bronx, just
blocks from the home where he had lived with his family for 17 years. What started out as an
enjoyable day turned into a nightmare when a group of officers from the New York City Police
Department ("NYPD") showed up; these officers forcibly shoved Mr. Johnson against a fence,
punched him, handcuffed him, and arrested and charged him with multiple misdemeanors. Why?
All for the "crime" of using his cellphone to record the police officers' aggressive interactions
with his friend in a public park.

2.      After Mr. Johnson spent hours locked up in a jail cell at the 47th precinct and
Central Booking, a judge summarily dismissed the bogus charges against him. Mr. Johnson went

home from Central Booking, believing that this ordeal was at least over. He went to school the next morning. He was bruised and sore from the officers' blows, but glad to be out of custody.

3.      But the NYPD's abuse of Mr. Johnson was not over. When he returned home from school that day, Tuesday, May 28, 2019, he was shocked to find the same two police officers who had assaulted, arrested, and wrongfully charged him—Defendants Hall and Cruz— waiting for him outside his house in an NYPD vehicle. These officers threatened him, warning him that it would be "so easy" to find a reason to arrest him again, and promised that they would come back to his house "every day."

4.      "This is going to be our second home right here," Police Officer Cruz told Mr. Johnson.

5.      In the weeks after May 28th, Defendants Cruz and Hall made good on their threats. They deliberately harassed Mr. Johnson, appearing at his house or parked behind his car on multiple occasions, always in the same NYPD vehicle.

6.      Mr. Johnson did nothing wrong on May 27, 2019. He exercised his First Amendment right to record the police when they interacted with his friend in a public place. After the police illegally arrested and assaulted him, Mr. Johnson exercised his First Amendment right to complain to the police about his treatment, to defend himself in court, and to speak to the press. For no reason other than the exercise of these rights, Defendants tracked Mr. Johnson, seeking to intimidate him into silence.

7.      Defendants violated Mr. Johnson's fundamental rights to be free from unlawful arrest, free from excessive force, free from illegal detention, free from baseless criminal charges—and free to record the police and express his views.

2

8.     Defendants Hall and Cruz's harassment is part of a longstanding and extensive custom and practice of NYPD police officers violating the rights of persons who record the police activities in public places.

**PARTIES**

9.     Plaintiff Kymani Johnson is a citizen of the United States who resides in Bronx County, New York.

10.     Defendant the City of New York ("City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, Defendant City, acting through the New York City Police Department ("NYPD"), was responsible for the policy, practice, supervision, implementation, and conduct of all NYPD matters, and was responsible for the appointment, training, supervision, and conduct of all NYPD personnel. In addition, at all relevant times, Defendant City was responsible for enforcing the rules of the NYPD and for ensuring that the NYPD personnel obey the laws of the United States and of the State of New York.

11.     At all times relevant hereto, Defendant Police Officer Kandice Hall was a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of Defendant City, and within the scope of her employment as such. Defendant Hall is sued in her individual capacity.

12.     At all times relevant hereto, Defendant Police Officer Benito Cruz was a police officer of the New York City Police Department, acting in the capacity of agent, servant, and employee of Defendant City, and within the scope of his employment as such. Defendant Cruz is sued in his individual capacity.

3

13.     Defendants Police Officers Jane Doe and John Roes #1-3, names and shield numbers unknown, were each at all times relevant hereto officers of the NYPD, acting in the capacity of agent, servant, and employee of Defendant City, and within the scope of their employment as such. The Doe and Roe Defendants are sued in their individual capacities.

14.     Defendants Police Officers Hall, Cruz, Jane Doe, John Roes #1-3 are collectively referred to as the "Individual Defendants."

## JURISDICTION AND VENUE

15.     This action arises under the First, Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. §§ 1983 and 1988.

16.     This Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4). This Court has jurisdiction to grant declaratory relief under 28 U.S.C. §§ 2201 and 2202.

17.     Venue is proper in this Court under 28 U.S.C. § 1391(b) because the acts complained of occurred in the Southern District of New York.

## JURY DEMAND

18.     Plaintiff demands trial by jury.

## STATEMENT OF FACTS

### *Mr. Johnson Is Grabbed, Punched, and Arrested*

19.     On May 27, 2019 (Memorial Day), Mr. Johnson was spending the afternoon with friends at Haffen Park in the Bronx, near where he lives.

20.     Multiple NYPD officers, including the Individual Defendants, entered the park, walked onto the basketball court where a game was in progress, approached one of Mr. Johnson's friends, and began to interact with that friend.

21.     Mr. Johnson believed that the police officers were treating his friend with excessive roughness.

22.    Mr. Johnson used his cell phone to record the encounter between the police officers and his friend in order to document the officers' use of force, shouting, and aggression. The recording could allow him to publicize or create accountability for the police officers' wrongful actions, if necessary.

23.    At no time did Mr. Johnson interfere with the police officers as they conducted police business.

24.    Defendant Hall attempted to snatch Mr. Johnson's cell phone out of his hands, claiming that Mr. Johnson was being "disrespectful."

25.    Apparently angered by, and in retaliation for, Mr. Johnson's attempt to record the police interaction, Defendants Hall and Cruz grabbed Mr. Johnson and shoved him up against a fence, which forced him to stop filming.

26.    Mr. Johnson was shocked; he repeatedly asked the police officers what they were doing and why they had grabbed him.

27.    During this interaction, Mr. Johnson was able to hand his phone to a friend.

28.    A crowd of onlookers gathered around the police officers and Mr. Johnson.

29.    Defendant Hall struck and punched Mr. Johnson with her fist multiple times in the shoulder area.

30.    Defendant Hall was not wearing a body camera at the time of her assault against Mr. Johnson.

31.    Defendant Hall took out her baton and waved it at the crowd, which included young children who appeared to be 9 or 10 years old.

32.    Mr. Johnson repeatedly asked why the police were doing this to him. He did not receive an answer.

5

33.     Defendant Jane Doe approached with her taser drawn, pointing it the crowd in a threatening manner.

34.     Defendants Cruz, Jane Doe, and John Roe #1 handcuffed Mr. Johnson. They continued to shove him as he was handcuffed.

35.     At no point did Mr. Johnson resist arrest or fight back against Defendants.

36.     At no point did Mr. Johnson consent to being handcuffed or arrested.

37.     At no point did any of the other officers, including John Roe #2 and John Roe #3, intervene to stop the unjustified arrest of Mr. Johnson for the excessive force used against him.

38.     Mr. Johnson was first taken to the 47th Precinct in the Bronx, and then to Central Booking, where he was detained for many hours.

39.     Defendant Cruz swore to a complaint alleging that Mr. Johnson had resisted arrest and obstructed governmental administration.

40.     These allegations were false.

41.     In the early hours of Tuesday, May 28, 2019, a judge summarily dismissed the charges against Mr. Johnson and he was released.

42.     Mr. Johnson had been detained approximately 12 hours.

***Defendants Cruz and Hall Retaliate Against Mr. Johnson***

43.     In the weeks following his wrongful arrest, Defendants Cruz and Hall surveilled and harassed Mr. Johnson without basis, in a retaliatory series of acts intended to intimidate and silence him.

### May 28, 2019: Defendants Appear at Mr. Johnson's Home

44.     Mr. Johnson attended high school on Tuesday, May 28, 2019, hours after the charges against him were dismissed and he was released from police custody.

45.    At school, Mr. Johnson visited a doctor for treatment of the injuries inflicted by the Individual Defendants; the physician documented injuries including including swelling, abrasions and redness to his wrists, forearms, elbows, and shoulders, and abrasions to his mouth.

46.    When Mr. Johnson returned home on May 28, he found Defendants Cruz and Hall in NYPD vehicle #4094 parked across the street from his home.

47.    Defendants Cruz and Hall made a number of intimidating and threatening remarks to Mr. Johnson.

48.    Defendant Cruz stated that they had been talking with Mr. Johnson's sister.

49.    Defendant Cruz stated, "This is going to be our second home right here."

50.    Defendant Cruz told Mr. Johnson that, if Mr. Johnson were ever to be caught speeding, it would "g[i]ve [him] a reason" to arrest him, saying, "It's stuff like that that's so easy. All we gotta do, all I gotta do is look and I have a reason [to arrest you]."

51.    Defendant Cruz threatened Mr. Johnson: "We're going to be coming, we're coming every day. *We're coming at different times, we're coming every day*."

52.    Mr. Johnson told Defendants Cruz and Hall, "I know my rights, I know my laws."

53.    Mr. Johnson recorded this interaction on his cell phone.

54.    Defendants Cruz and Hall remained parked across the street from Mr. Johnson's home for approximately twenty minutes after Cruz ended his conversation with Mr. Johnson.

55.    Defendants Cruz and Hall had no reason or cause to monitor Mr. Johnson, his family, or his home on May 28, 2019.

56.    Upon information and belief, Defendants Cruz and Hall were not conducting any valid police business when they visited Mr. Johnson's home on May 28, 2019. Instead, Defendants Cruz and Hall sought to punish Mr. Johnson for attempting to record their police

7

activity the day before, and to intimidate him into silence about their misconduct of punching and arresting him.

57.     Even after May 28, 2019, Defendants Cruz and Hall continued to stalk, harass, and intimidate Mr. Johnson, making good on their promise to return to his house.

**May 30, 2019: Defendants Monitor Mr. Johnson's Home**

58.     Two days later, on May 30, 2019, Defendants Cruz and Hall returned to Mr. Johnson' street, in the same NYPD vehicle (#4094), and parked in front of his house.

59.     At the time, Mr. Johnson was not at home.

60.     Mr. Johnson's sister took photos of the NYPD vehicle parked in front of their home.

61.     Defendants Cruz and Hall had no reason or cause to monitor Mr. Johnson, his family, or his home on May 30, 2019.

62.     Upon information and belief, Defendants Cruz and Hall were not conducting any valid police business when they parked and remained in front of Mr. Johnson's house on May 30, 2019.

**June 11, 2019: Defendants Follow Mr. Johnson and Surveil Him**

63.     On June 4, 2019, Mr. Johnson filed a notice of claim with the Comptroller of the City of New York about the May 27, 2019 assault and false arrest by Defendants.

64.     On June 5, 2019, concerned about Defendants' repeated harassment, Mr. Johnson's attorney sent a letter to NYPD Commissioner James P. O'Neill, Deputy Commissioner of Internal Affairs Joseph Reznick, Assistant Chief Larry W. Nikunen, and Inspector Eric Hernandez alerting them to Defendants' repeated and unwarranted contacts with

Mr. Johnson. The letter asked these NYPD officials to direct Defendants Cruz and Hall to cease and desist in their harassment of Mr. Johnson.

65.     On June 10, 2019, the *New York Daily News* published a story about Defendants' unlawful arrest of Mr. Johnson and their harassment of him at his home after the charges were dismissed.[1]

66.     The very next day, on June 11, 2019, Defendants Cruz and Hall, in NYPD vehicle #4094, again tracked Mr. Johnson, parking directly behind his car for several minutes, while Mr. Johnson was in Haffen Park.

67.     Defendants Cruz and Hall had no reason or cause to monitor Mr. Johnson on June 11, 2019.

68.     Upon information and belief, Defendants Cruz and Hall were not conducting any valid police business when they parked directly behind Mr. Johnson's car on June 11, 2019.

### June 23, 2019: Defendants Surveil Mr. Johnson's Home Once Again

69.     On June 23, 2019, Defendants Cruz and Hall returned to Mr. Johnson's street once again. They parked directly across from Mr. Johnson's house in the same NYPD vehicle #4094, and sat in the car for approximately five to ten minutes. They did not exit the vehicle.

70.     After five to ten minutes, Defendants Cruz and Hall made a U-turn so that they could drive directly in front of Mr. Johnson's house. Mr. Johnson, who was sitting on his front porch, made eye contact with Defendant Hall.

71.     Defendants Cruz and Hall had no reason or cause to monitor Mr. Johnson on June 24, 2019.

---

[1] https://www.nydailynews.com/new-york/ny-nypd-follows-teen-20190610-cgm4qfhdpratddhhqbpoy7qx6a-story.html

72.     Upon information and belief, Defendants Cruz and Hall were not conducting any valid police business when they parked across the street from Mr. Johnson's house on June 23, 2019.

73.     Upon information and belief, Defendant Officers Hall and Cruz monitored Mr. Johnson's home on additional dates since May 27, 2019, other than those dates listed above, including by parking a police vehicle outside the house and driving by the house. Upon information and belief, Defendants Cruz and Hall were not conducting any valid police business on these dates.

74.     As a result of the Individual Defendants' conduct, Mr. Johnson was wrongfully arrested, subjected to excessive force, and subjected to retaliatory harassment and intimidation.

75.     Mr. Johnson suffered physical and emotional injuries from the Individual Defendants' actions.

***The City Has a Custom and Practice of Violating the First Amendment Rights of Persons Recording Police Activity***

76.     The Individual Defendants' retaliatory actions against Mr. Johnson in response to his attempt to record the police and his protest of mistreatment at their hands—including the use of excessive force against him, his wrongful arrest, the false charges filed against him, and officers' stalking and harassment of him—conforms with the NYPD's longstanding history and pattern of violating the public's First Amendment right to record police activity.

77.     This longstanding custom and practice, which continues to this day, violates the NYPD's own internal, written rules.

78.     In 1977, the City of New York entered into a consent decree in the class action litigation, *Black v. Codd*, 73 Civ. 5283, in which the City and the NYPD stipulated that members of the public in the vicinity of public police activity "may remain in the vicinity . . . as an

10

onlooker," and that the onlooker's speech, request for shield numbers, or taking photographs shall not constitute probable cause for an arrest.

79.     NYPD Patrol Guide section 208-03 echoes the language from the *Black v. Codd* consent decree, in a section relating to "Arrest Processing." Specifically, the Patrol Guide notes that people "who happen to be in or are attached to the area" of police activity "are allowed to observe the police officer's actions." It notes that this "right to observe is, of course, limited by reasons of safety to all concerned," but provides no guidance on what observational activities could be a legitimate threat to safety.

80.     Over the decades that followed, the NYPD routinely violated this consent decree and failed to heed the Patrol Guide. NYPD officers routinely retaliated against members of the public attempting to observe or document police activity.

81.     In August 2014, the NYPD issued a "FINEST MESSAGE," reiterating that the public has the right to record the public activities of the police and that recording the police does not constitute interference with police activity that could subject to person to arrest.

82.     Two years later—as NYPD officers continued to ignore these written policies and retaliate against people who recorded their activities—the NYPD circulated additional guidance on the First Amendment, in April 2016, which stated, in part:

Recognizing the affirmative right to record police interaction **UNDER NO CIRCUMSTANCES** should a member of the Service:

- Threaten, intimidate, or otherwise discourage an observer from recording the police officer's activities, assuming the observer is at a safe distance;

- Intentionally block or obstruct cameras or other recording devices when there is no legitimate law enforcement reason to do so; or

- Delete any pictures or videos from the observer's camera, or order observer to delete such pictures or recordings.[2]

83.     The NYPD's improper interference with and systematic retaliation against those who attempt to record police activity spurred the Civilian Complaint Review Board ("CCRB")[3] to issue a detailed report in June 2017, titled *Worth a Thousand Words: Examining Officer Interference with Civilian Recordings of Police*, analyzing police interference and misconduct relating to a civilian's right to record police activity (hereinafter, "the CCRB Report").

84.     The CCRB Report detailed that there were 96 substantiated allegations of police interference with the right to record between 2014-2016. The report acknowledged that these allegations only reflect complaints made to CCRB, a small subset of all police misconduct. "However, even with its limitations, the data supports the conclusion that officer interference with civilian recording of police conduct is an issue in New York City."

85.     Although, as the CCRB Report affirmed, "the right of civilians to record the public actions of police officers is rooted in the First Amendment of the Constitution and must be protected," the report described numerous instances of NYPD officers attempting to interfere with a civilian recording a police encounter, both individuals involved in the police interaction and bystanders observing an interaction. The report found that, "in certain cases, police officers effected arrests and issued summonses for the purpose of retaliation."

86.     The CCRB Report found that NYPD officers required significantly better guidance and training on the public's right to record police activity. It characterized the Patrol Guide language as limited, ineffective, and in need of enhancement. "It is, therefore, essential

---

[2] See Office of the Deputy Commissioner, Legal Bureau Bulletin, Vol. 46, No. 2 (April 2016).
[3] The CCRB is empowered by the New York City Charter to receive and investigate complaints from the public about misconduct by the NYPD. The 13 members of the Board are appointed by the Mayor, the City Council, and the Police Commissioner. It has a 110-member Investigations Division.

that the Patrol Guide be updated to include a section with comprehensive guidelines for officers to follow when they encounter a civilian who wants to record police conduct." The CCRB Report recommended guidelines that, among other things, affirms the public's right to record public police activity and provides specific examples of police actions that constitute interference with that right, such as verbal commands to stop filming and threats against the person recording.

87.     The CCRB Report further recommended that the NYPD implement training "to ensure that officers comply with the updated Patrol Guide parameters. . . . Implementing training that teaches officers about the legal rights of recording civilians . . . and incorporates principles of de-escalation might help mitigate the number of interference-related CCRB complaints made against officers."

88.     The Legal Aid Society, representing plaintiff Ruben An in *An v. City of New York*, 16-cv-5381 (S.D.N.Y.), filed an amended complaint on June 2, 2017, that detailed more than 30 different federal lawsuits and nearly a dozen other media reports alleging NYPD interference with civilians' right to record public police activity dating back at least to 2004.

89.     By a Stipulation of Settlement dated October 9, 2018, the NYPD settled the *An* lawsuit with an agreement to effect changes to the Patrol Guide, implement new training procedures, and issue a clarifying FINEST message about the public's right to record police activities.

90.     Still, NYPD officers continue to routinely violate these written policies by retaliating against members of the public who record or attempt to record police activities.

91.     For example, the CAPstat database assembled by the Legal Aid Society tracked thirteen lawsuits filed in federal court between 2015-2018 relating to incidents in the Bronx

alone in which officers were alleged to have retaliated against members of the public for recording police activity.

92.     The same CAPstat database collected dozens of other cases throughout New York City raising similar allegations of retaliation against those exercising their First Amendment rights by recording police activity in public.

93.     On information and belief, despite its knowledge of the prevalent problem of its officers interfering with protected recording activity, the NYPD has failed to take sufficient steps to retrain police officers and update its policies and procedures.

94.     On information and belief, the NYPD has failed to institute sufficient training, monitoring, supervision, or discipline to prevent officers from violating civilians' First Amendment rights. Upon information and belief, the current NYPD policies and procedures do not sufficiently train, monitor, or supervise officers with respect to circumstances under which civilians must be permitted to observe and film police activities, and the NYPD does not adequately discipline officers for failing to respect those civilians' First Amendment rights. The violation of Mr. Johnson's rights was a direct result in the NYPD's deficient training, monitoring, supervision, and discipline of its officers with respect to protecting the public's First Amendment right to record the police.

95.     As demonstrated by the CCRB Report and the numerous lawsuits that have been filed, as a result of the failure to adequately train, monitor, supervise, and discipline officers to ensure compliance with the law, NYPD officers have continued their widespread practice and custom of interfering with the rights of civilians to observe and record police activity.

96.     The numerous lawsuits, media reports, and the findings of the CCRB Report alleging systemic and widespread violation of civilians' right to observe and record police

activity show that the City's actions have not only failed to prevent NYPD officers' longstanding violation of civilians' rights, but also that any stated policies prohibiting retaliation for recording police activities does not actually reflect the NYPD's true, official policy in practice.

97.     The City's failure to train, monitor, supervise, and discipline NYPD officers to respect individuals' First Amendment rights amounts to deliberate indifference to the constitutional violations committed by the NYPD against individuals, including Mr. Johnson. The City knows or should have known that NYPD officers have a history of improperly attempting to stop or retaliating against civilians who record or attempt to record police activity.

98.     The NYPD's practice and custom of interfering with civilians who, without interfering with police activity, record or attempt to record police officers is so persistent, pervasive, and widespread as to constitute a custom or usage and imply the constructive knowledge or acquiescence of the City and its policymakers. The numerous instances of abuse, dozens of lawsuits that have been filed against the City and/or NYPD officers, the CCRB Report, and media coverage of this issue demonstrate that the City is or should have been aware of the constitutional violations committed by the NYPD. The constitutional violations are so numerous, persistent, and pervasive that the need for corrective action is obvious, and the City's failure to take any such action constitutes deliberate indifference to the violations. This deliberate indifference to the NYPD's widespread deprivation of constitutional rights must be considered a policy, practice, or custom of the City.

## FIRST CAUSE OF ACTION
42 U.S.C. § 1983 – Fourth and Fourteenth Amendments – False Arrest
(Against the Individual Defendants)

99.     Plaintiff repeats and realleges the above paragraphs as if they were fully set forth at length herein.

100.   Defendants wrongfully and illegally arrested Plaintiff and falsely charged Plaintiff with crimes.

101.   The wrongful, unjustifiable, and unlawful apprehension, arrest, and detention of Plaintiff was carried out without any basis, without Plaintiff's consent, and without probable cause or reasonable suspicion.

102.   Defendants knew they lacked probable cause to arrest Plaintiff because they knew that Plaintiff had not engaged in any unlawful conduct.

103.   No reasonable officer would have believed there was probable cause to arrest Plaintiff under these circumstances.

104.   At all relevant times, Defendants acted forcibly in apprehending and arresting Plaintiff.

105.   Throughout this period, Plaintiff was unlawfully, wrongfully, and unjustifiably held under arrest, deprived of his liberty, and falsely charged. At all times, the unlawful, wrongful, and false arrest of Plaintiff was without basis and without probable cause or reasonable suspicion.

106.   All this occurred without any fault or provocation on the part of Plaintiff.

107.   Defendants acted under pretense and color of state law. Said acts by Defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and Defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of their constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth and Fourteenth Amendments to the United States Constitution.

108.   Defendants' conduct was willful, wanton, and reckless.

109.   As a direct and proximate result of the misconduct and abuse of authority detailed

16

above, Plaintiff sustained the damages hereinbefore alleged.

## SECOND CAUSE OF ACTION
42 U.S.C. § 1983 – Excessive Force
(Against Individual Defendants)

110.   Plaintiff repeats and realleges the above paragraphs as if they were set forth fully

herein.

111.   By reason of the foregoing, and by punching, pushing, and forcefully handcuffing

Plaintiff, Defendants Hall, Cruz, Jane Doe #1 and John Doe #2 used unreasonable and excessive

force under the circumstances they confronted.

112.   Defendants Hall, Cruz, Jane Doe #1 and John Doe #2 acted under pretense and

color of state law. Said acts were beyond the scope of their jurisdiction, without authority of law,

and in abuse of their powers, and Defendants acted willfully, knowingly, and with the specific

intent to deprive Plaintiff of his constitutional rights secured by 42 U.S.C. § 1983, and by the

Fourth and Fourteenth Amendments to the United States Constitution.

113.   As a direct and proximate result of the misconduct and abuse of authority detailed

above, Plaintiff sustained the damages hereinbefore alleged.

## THIRD CAUSE OF ACTION
42 U.S.C. § 1983 – Failure to Intervene
(Against Individual Defendants)

114.   Plaintiff repeats and realleges the above paragraphs as if they were set forth fully

herein.

115.   Uniformed NYPD officers have an affirmative duty to assess the lawfulness of

interactions between their fellow members of service and civilians and to intervene where they

observe another uniformed employee falsely arresting a civilian or using excessive force against

a civilian.

17

116.    Defendants were present and witnessed other defendants falsely arrest, detain, and use excessive force against Plaintiff.

117.    Defendants had a reasonable opportunity to intervene to prevent the false arrest and unlawful detention of and excessive force against Plaintiff.

118.    Defendants failed to take any action or make any effort to intervene, halt the unlawful actions of their fellow police officers, or protect Plaintiff.

119.    Defendants' failure to intervene proximately caused the violation of Plaintiff's constitutional rights.

120.    As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

## FOURTH CAUSE OF ACTION
42 U.S.C. § 1983 – First Amendment Retaliation
(Against Defendants Cruz and Hall)

121.    Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

122.    Plaintiff engaged in activity protected by the First Amendment, including but not limited to recording in a public place the forceful arrest of his friend; complaining about the forceful arrest of his friend to the officers on the scene, including Defendants; protesting Defendants' unlawful and excessively forceful actions toward him; defending himself in court against the baseless and maliciously initiated charges that lacked probable cause; and speaking to the press about Defendants' harassment of him.

123.    Defendant Hall and Cruz's actions in arresting Plaintiff and, after charges were dismissed, in repeatedly appearing outside his home and following his car were motivated or substantially caused by Plaintiff's exercise of his First Amendment protected rights, including

18

his right to record the police, complain to public officials, and seek judicial relief from the officers' actions.

124.     Defendant Hall and Cruz's harassment campaign had the purpose and effect of chilling Plaintiff's exercise of his free speech rights, protected by the First Amendment, including his right to seek judicial relief for Defendants' wrongdoing.

125.     As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages hereinbefore alleged.

**FIFTH CAUSE OF ACTION**
*Monell* Liability
(Against City of New York)

126.     Plaintiff repeats and realleges the above paragraphs as if they were set forth fully herein.

127.     At all relevant times, Defendant City, acting through the NYPD and the Individual Defendants, had *de facto* policies, practices, customs, and usages that directly and proximately caused the violation of Plaintiff's First Amendment rights as alleged herein.

128.     All acts complained of herein were carried out by NYPD officers in their capacities as police officers and pursuant to the customs and practices of the City, including the NYPD.

129.     The NYPD maintains a widespread practice and custom of violating the First Amendment rights of persons who, without interfering with police activity, record or attempt to record police officers acting in public. The actions of the Individual Defendants reflect the customs and practices of the NYPD and the City. These customs and practices resulted in a violation of Plaintiff's First Amendment rights. They include but are not limited to: (1) forcefully grabbing Plaintiff because he was recording and objecting to NYPD officers performing their

19

official duties in public; (2) arresting Plaintiff on pretextual charges because he was recording and objecting to police officers; (3) using excessive force against Plaintiff because he was recording and objecting to police officers; (4) filing false charges against Plaintiff at least in part because he was recording and objecting to police officers; and (5) stalking and harassing Plaintiff outside his home and around the neighborhood, in an effort to intimidate him into silence.

130.    The City, through its policymakers and agents, condoned, permitted, encouraged, and/or ratified the NYPD practices and customs challenged herein, which allowed NYPD officers to disregard and violate Plaintiff's exercise of his First Amendment rights when he attempted to observe, record, and object to NYPD officers performing duties in public. The City was on notice of the illegal retaliation and harassment of Plaintiff, through his counsel's letter to NYPD leaders dated June 5, 2019, and failed to take any action to stop it.

131.    The City, through its policymakers and agents, has been deliberately indifferent to the rights of individuals including Plaintiff, who come into contact with NYPD officers as they record or attempt to record the officers. The City failed to adequately train, monitor, supervise, or discipline its officers, employees, and agents, including the Individual Defendants, to respect and not violate the First Amendment rights of civilians such as Plaintiff. As a result of the City's failure, Plaintiff First Amendment rights were violated when he was arrested, prosecuted, stalked, and harassed due to his attempt to record police activity.

132.    Plaintiff's arrest and prosecution and subsequent harassment at the hands of the City's employees and agents chilled and infringed upon his exercise of his First Amendment rights. Thus, Plaintiff suffered injury as a result of the City's conduct.

WHEREFORE, Plaintiff respectfully requests judgment against Defendants as follows:

a.     A declaratory judgment that the City violated Plaintiff's rights under the First Amendment of the Constitution of the United States and 42 U.S.C. § 1983, and that Plaintiff's attempted recording of NYPD officers, his objections to the officers' conduct, his defense in court, and his statements to the press were protected by the First Amendment to the Constitution;

b.     Compensatory damages in an amount to be determined at trial;

c.     Punitive damages in an amount to be determined at trial;

d.     Reasonable attorneys' fees and costs under 42 U.S.C. § 1988; and

e.     Such other and further relief as this Court may deem just and proper.

Dated:   New York, New York
        May 26, 2022

EMERY CELLI BRINCKERHOFF
ABADY WARD & MAAZEL LLP

By:   _Katherine Rosenfeld_

Katherine Rosenfeld
600 Fifth Avenue, 10th Floor
New York, NY 10020
(212) 763-5000

*Attorneys for Plaintiff*